IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

ANGELETTE, LLC, an Alaska limited
liability company,

              Plaintiff,

    vs.

RYAN BRADLEY, an individual,
LYUDA GORBACHUK, an individual,

              Defendants.

Case Nos. 1:22-cv-00055-JMK
          1:22-cv-00059-JMK
          Consolidated

**ORDER RE MOTIONS FOR
SUMMARY JUDGMENT**

Before the Court at Dockets 17 and 18 are motions for summary judgment by Plaintiff Angelette, LLC, and Defendants Ryan Bradley and Lyuda Gorbachuk. The motions are fully briefed.[1] Oral argument was not requested and is not deemed necessary.

## I. BACKGROUND

This case concerns a dispute over the interpretation of a maritime employment contract between Plaintiff—which owns a commercial fishing vessel, the F/V ANGELETTE—and Defendants, two deckhands. The facts of this case are straightforward, and the parties have not identified any disputed facts. Plaintiff employed Defendants as

---

[1] Docket 17 (Defs.' Mot. Summ. J.); Docket 18 (Pl.'s Mot. Summ. J.); Docket 21 (Pl.'s Opp'n to Defs.' Mot. Summ. J.); Docket 22 (Def.s' Opp'n to Pl.'s Mot. Summ. J.); Docket 24 (Pl.'s Reply Supp. Mot. Summ. J.); Docket 25 (Defs.' Reply Supp. Mot. Summ. J.).

deckhands on the F/V ANGELETTE during the 2019 Prince William Sound salmon fishing season, which took place from approximately June 15, 2019, through September 15, 2019.[2] The parties entered into a written contract pursuant to which Plaintiff agreed to compensate Defendants by paying them a share of the vessel's revenue from fish sold during the fishing season.[3] The contract provides as follows:

> Compensation. Crew Member shall receive in full payment for all services, the following share: $12^{00/100}$% of the Vessel's gross stock (based on cash actually received by the Vessel for fish sold) after fuel, lube oil and food have been deducted. The crew will be responsible for the payment of all fuel and lube oil. Expenses begin at the time the Vessel leaves port. The compensation will be paid 30 days after the close of the fishing effort for the season. The share will be the sole compensation for Crew Member. All work performed by Crew Member in terms of making the Vessel ready for sea, repairs and taking the Vessel out of service shall be paid for by the share and shall not entitle Crew Member to extra compensation. Crew Member is not entitled to any part of any post-contract adjustment paid to owner/operator as part of a loyalty or performance incentive paid by any fish buyer.[4]

After the 2019 fishing season ended, Plaintiff paid Defendants their respective 12% shares of the revenue generated from the F/V ANGELETTE's catch.[5] On June 8, 2020, Plaintiff paid Defendants their share of a price adjustment issued in relation to the fish sold during the 2019 fishing season.[6]

There is no indication that, under usual circumstances, Defendants would have anticipated receiving any further compensation in relation to their work from the 2019

---

[2] Docket 17 at 2; Docket 17-1 at 1 (Bradley Crew/Employment Contract); Docket 17-2 at 1 (Gorbachuk Crew/Employment Contract). Both Defendants' contracts are identical in all respects relevant here.

[3] Docket 17-1 at 1; Docket 17-2 at 1.

[4] Docket 17-1 at 1; Docket 17-2 at 1.

[5] Docket 17 at 2.

[6] *Id.*; Docket 17-3 at 1; Docket 18 at 7–8.

*Angelette, LLC v. Bradley et al.*  Case Nos. 1:22-cv-00055-JMK, 1:22-cv-00059-JMK, Consolidated
Order Re Motions for Summary Judgment  Page 2

Case 1:22-cv-00055-JMK  Document 26  Filed 05/30/23  Page 2 of 22

fishing season. However, in September 2020, the U.S. Department of Agriculture ("USDA") announced the Seafood Trade Relief Program (the "STRP"), a temporary new program intended to "provide financial assistance to commercial fishermen for expanding or aiding in the expansion of domestic markets for U.S. commercially caught and sold seafood."[7] USDA's stated justification for the STRP was that "seafood commodities have been impacted by trade actions of foreign governments resulting in the loss of exports."[8] Through the program, USDA provided payments to U.S. commercial fishermen who held a commercial fishing permit to harvest seafood and had "an ownership interest in the production" of eligible seafood produced in "the 2020 calendar year."[9] USDA intended the payments to "reflect the estimated severity of the impact of trade disruptions to U.S. seafood caught and sold commercially, and the adjustment to new trade patterns for" seafood products USDA identified as impacted by the foreign trade actions.[10] Salmon made the list of seafood products eligible for payment, and USDA paid eligible commercial fishermen $0.16 per pound of salmon produced in 2019.[11] Neither the *Federal Register* notice announcing the STRP nor the public materials following the announcement identified any conditions on commercial fishermen's use of the payments received from

---

[7] Notice of Funds Availability (NOFA); Seafood Trade Relief Program (STRP), 85 Fed. Reg. 56572, 56575 (Sept. 14, 2020) [hereinafter STRP Notice].

[8] *Id.*

[9] *Id.* at 56573.

[10] *Id.* at 56574.

[11] *Id.*

*Angelette, LLC v. Bradley et al.*          Case Nos. 1:22-cv-00055-JMK, 1:22-cv-00059-JMK, Consolidated
Order Re Motions for Summary Judgment          Page 3
Case 1:22-cv-00055-JMK   Document 26   Filed 05/30/23   Page 3 of 22

the program, such as a requirement that commercial fishermen distribute any portion of the payment to any other entity, including crewmembers.[12]

Plaintiff applied for—and, on October 22, 2020, received—a STRP payment based on the quantity of salmon it produced in 2019.[13] It did not share any portion of this payment with Defendants.[14] In April and May 2022, Defendants filed notices of claim of maritime lien against the F/V ANGELETTE in the amount of $40,000 each based on contentions that Plaintiff owed them a share of the STRP payment as part of their wages for the 2019 fishing season.[15] In a declaration, Bradley states that the sole member of

---

[12] *See generally id.*; U.S. Dep't of Agric., Clarification of Seafood Trade Relief Program (STRP) Eligible Applicants in Alaska Fisheries, Notice SP-82 (Dec. 3, 2020), https://www.fsa.usda.gov/Internet/FSA_Notice/sp_82.pdf [hereinafter Clarification Notice]; U.S. Dep't of Agric., Seafood Trade Relief Program (STRP) Fact Sheet, https://www.farmers.gov/sites/default/files/2020-12/FSA_STRP_FactSheet-2020.pdf (last visited Apr. 18, 2023). The Court takes judicial notice of these government publications, which Plaintiff filed with its summary judgment motion at Docket 20 and the relevance and veracity of which Defendants do not challenge. *See Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) ("Under Rule 201 [of the Federal Rules of Evidence], the court can take judicial notice of '[p]ublic records and government documents available from reliable sources on the Internet,' such as websites run by governmental agencies." (second alteration in original) (quoting *Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08–CV–1166–IEG (POR), 2009 WL 6597891, *1 (S.D. Cal. Dec. 23, 2009)) (first citing *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 999 (9th Cir. 2010); and then citing *Paralyzed Veterans of Am. v. McPherson*, No. C 06–4670 SBA, 2008 WL 4183981, *5 (N.D. Cal. Sept. 8, 2008))).

[13] Docket 19 at 3 ¶ 9.

[14] Although Plaintiff's answer to Bradley's counterclaim curiously denies the allegation that Plaintiff did not share the STRP payment with its deckhands, *see* Docket 10 at 1 ¶ 2 (admitting Plaintiff received the STRP payment but denying Bradley's allegation that Jay Thomassen, Plaintiff's sole member, and Plaintiff did not share the payment with their deckhands), Plaintiff's motion for summary judgment implicitly acknowledges that it did not share the payment with Defendants. *See* Docket 18 at 4 ("Defendants are not entitled to a share of the STRP program payment, thus Angelette, LLC seeks a declaration that Defendants' maritime liens against the F/V ANGELETTE are null and void."). It remains unaddressed whether Plaintiff shared its STRP payment with other deckhands beside Defendants, but this possibility is beyond the scope of this order as neither Plaintiff nor Defendants address this point in their filings with the Court.

[15] *See* Docket 19-3 at 1 (letter to Plaintiff regarding Bradley's claim); Docket 19-4 (Bradley's notice of claim of lien); Docket 19-5 (Gorbachuk's notice of claim of lien).

*Angelette, LLC v. Bradley et al.*  Case Nos. 1:22-cv-00055-JMK, 1:22-cv-00059-JMK, Consolidated
Order Re Motions for Summary Judgment  Page 4

Case 1:22-cv-00055-JMK  Document 26  Filed 05/30/23  Page 4 of 22

Plaintiff, Jay Thomassen, informed him that the STRP payment "is for returning crew only" and that "[e]very other vessel owner [he] know[s] . . . shared the trade relief bonus with their crew."[16] Plaintiff has not disclosed to the Court the value of the STRP payment it received.[17]

Plaintiff commenced this action in May 2022, claiming it paid Defendants "all wages earned" and "no money is owed giving rise to a maritime lien assertable against the Vessel ANGELETTE."[18] Plaintiff seeks an order declaring that the F/V ANGELETTE is not subject to Defendants' liens.[19] Defendants asserted a counterclaim against Plaintiff seeking respective 12% shares of the STRP payment, wage penalties pursuant to Alaska Stat. § 23.05.140, and punitive damages under general maritime law.[20]

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), courts must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that "there is an absence of evidence to support the nonmoving party's case."[21] If the moving party meets this burden, the burden shifts to the non-moving party to

---

[16] Docket 23-1 at 1 ¶¶ 2, 4.
[17] *See generally* Docket 1; Docket 10; Docket 18.
[18] Docket 1 at 2 ¶ 11; Docket 19 at 3 ¶¶ 7–8. Plaintiff's original complaint named only Bradley, but it filed a separate action against Gorbachuk that the Court subsequently consolidated with the action against Bradley. *See* Docket 16 at 2 (consolidating case numbers 1:22-cv-00055-JMK and 1:22-cv-00059-JMK). The parties noted in a joint stipulation that Gorbachuk's answer and counterclaim are "identical" to those which Bradley filed, so the Court refers here only to those documents filed in this case under case number 1:22-cv-00055-JMK. Docket 15 at 3.
[19] Docket 1 at 3 ¶ 1.
[20] Docket 6 at 2 ¶¶ 3–4.
[21] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

*Angelette, LLC v. Bradley et al.*          Case Nos. 1:22-cv-00055-JMK, 1:22-cv-00059-JMK, Consolidated
Order Re Motions for Summary Judgment                                                          Page 5

Case 1:22-cv-00055-JMK     Document 26     Filed 05/30/23     Page 5 of 22

"designate 'specific facts showing that there is a genuine issue for trial.'"[22]  The non-moving party cannot rely on "mere allegations or denials"; instead, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party."[23]

In reviewing the record on a motion for summary judgment, courts must "view the facts and draw reasonable inferences" in the light most favorable to the non-moving party.[24]  If "both parties assert[] that there are no uncontested issues of material fact," courts still must "determine whether disputed issues of material fact are present."[25]  However, when the non-moving party's version of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."[26]  Similarly, no genuine dispute exists "where the only evidence presented is 'uncorroborated and self-serving' testimony."[27]

In a case such as this, where both parties have moved for summary judgment, courts must "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences."[28]  In evaluating the parties' motions, "the court

---

[22] *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting Fed. R. Civ. P. 56(e)).

[23] *Anderson*, 477 U.S. at 248 (citations omitted).

[24] *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted).

[25] *United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978).

[26] *Scott*, 550 U.S. at 380.

[27] *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)) (citing *Johnson v. Wash. Metro. Transit Auth.*, 883 F.2d 125, 128 (D.C. Cir. 1989)); *see also Oakley, Inc. v. McWilliams*, 584 Fed. App'x 528, 529 (9th Cir. 2014) (citations omitted) ("[A party's] self-serving and uncorroborated declarations . . . are insufficient to avert summary judgment.").

[28] *ACLU of Nev. v. City of Las Vegas*, 466 U.S. 784, 790–91 (9th Cir. 2006) (internal quotation marks omitted) (citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665,

*Angelette, LLC v. Bradley et al.*                      Case Nos. 1:22-cv-00055-JMK, 1:22-cv-00059-JMK, Consolidated
Order Re Motions for Summary Judgment                                                                      Page 6

Case 1:22-cv-00055-JMK    Document 26    Filed 05/30/23    Page 6 of 22

must consider each party's evidence, regardless under which motion the evidence is offered."[29]

## III. DISCUSSION

The parties' dispute centers on an interpretation of the contract between Plaintiff and Defendants and, specifically, whether the contract entitles Defendants to additional compensation in the form of a share of the STRP payment. If the contract entitles Defendants to a share of the STRP payment, Defendants will prevail on their wage claims and Plaintiff will not be entitled to a declaration invalidating the maritime liens filed against the F/V ANGELETTE. If the contract does not entitle Defendants to a share of the STRP payment, their wage claims fail and Plaintiff will be entitled to its requested declaration. The Court begins by restating general principles of maritime contract interpretation and the parties' arguments and then applies those principles to the arguments.

### A. Maritime Contract Interpretation

Federal maritime law applies to maritime contracts.[30] Although courts may consider state law to interpret maritime contracts to the extent state law does not conflict

---

674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard.")

[29] *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

[30] *Aqua-Marine Constructors, Inc. v. Banks*, 110 F.3d 663, 670 (9th Cir. 1997) (citing *Ins. Co. v. Dunham*, 78 U.S. (11 Wall.) 1, 29 (1870)).

*Angelette, LLC v. Bradley et al.*          Case Nos. 1:22-cv-00055-JMK, 1:22-cv-00059-JMK, Consolidated
Order Re Motions for Summary Judgment                                                    Page 7

Case 1:22-cv-00055-JMK   Document 26   Filed 05/30/23   Page 7 of 22

with federal maritime law,[31] federal courts generally "interpret and resolve disputes concerning maritime contracts according to federal law."[32]

When interpreting maritime contracts under federal law, courts apply "[b]asic principles in the common law of contracts."[33] In the Ninth Circuit, courts consider the foundational elements of contract law articulated in the RESTATEMENT (SECOND) OF CONTRACTS.[34] In essence, "[m]aritime contracts must be construed like any other contracts: by their terms and consistent with the intent of the parties."[35] Thus, courts must look to the contract terms' "ordinary meaning, and whenever possible, the plain language of the contract should be considered first."[36] In so doing, courts should read maritime contracts "naturally."[37] Absent a compelling reason, courts should not "contravene [a] clause's obvious meaning."[38]

Summary judgment is appropriate in cases involving contractual interpretation "only if the contract or contract provision in question is unambiguous."[39]

---

[31] *Id.* at 667–68 (citing *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310 (1955)).

[32] *Heko Servs., Inc. v. ChemTrack Alaska, Inc.*, 418 F. Supp. 3d 656, 660 (W.D. Wash. 2019) (first citing *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 23 (2004); and then citing *Starrag v. Maersk, Inc.*, 486 F.3d 607, 616 (9th Cir. 2007)).

[33] *Clevo Co. v. Hecny Transp., Inc.*, 715 F.3d 1189, 1194 (9th Cir. 2013) (citing *Kirby*, 543 U.S. at 23).

[34] *See id.* (applying the RESTATEMENT (SECOND) OF CONTRACTS to determine the enforceability of a guarantee letter).

[35] *CITGO Asphalt Refin. Co. v. Frescati Shipping Co.*, 140 S. Ct. 1081, 1087–88 (2020) (internal quotation marks omitted) (citations omitted).

[36] *Anderson v. City of Seward*, 475 F. Supp. 3d 986, 991 (D. Alaska 2020) (quoting *Starrag*, 486 F.3d at 616).

[37] *Kirby*, 543 U.S. at 31 (citing *United States v. Gonzales*, 520 U.S. 1, 5 (1997)).

[38] *Id.* at 31–32 (citing *Green v. Biddle*, 21 U.S. (8 Wheat.) 1, 89–90 (1823)).

[39] *Castaneda v. Dura-Vent Corp.*, 648 F.2d 612, 619 (9th Cir. 1981) (citations omitted).

*Angelette, LLC v. Bradley et al.*                Case Nos. 1:22-cv-00055-JMK, 1:22-cv-00059-JMK, Consolidated
Order Re Motions for Summary Judgment                                                                Page 8

Case 1:22-cv-00055-JMK   Document 26   Filed 05/30/23   Page 8 of 22

Accordingly, courts first must determine whether the contract is ambiguous, that is, whether the relevant provisions are "reasonably susceptible to more than one interpretation."[40] "Only if the language is ambiguous . . . should a court examine extrinsic evidence and look beyond the written language of the contract."[41]

In determining whether ambiguity exists, several principles warrant consideration. First, a finding of ambiguity requires more than mere "uncertainty or lack of clarity" in the contract's language.[42] Second, ambiguity generally does not arise from mere disagreement about a contract's terms.[43] Third, "silence does not equate to an ambiguity."[44] Courts generally find silence indicative of ambiguity "only when the silence involves a matter naturally within the scope of the contract as written. A contract is not ambiguous merely because it fails to address some contingency; the general presumption is that 'the rights of the parties are limited to the terms expressed' in the contract."[45]

---

[40] *Teras Chartering, LLC v. Hyupjin Shipping Co.*, Case No. 2:16-cv-0188-RSM, 2017 WL 2363632, at *7 (W.D. Wash. May 31, 2017) (quoting *Atl. Dry Dock Corp. v. United States*, 773 F. Supp. 335, 338 (M.D. Fla. 1991)).

[41] *Anderson*, 475 F. Supp. 3d at 991 (citing *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 (5th Cir. 1986)); *see also Ingram Barge Co. v. Fitzgerald Marine & Repair, Inc. (In re Fitzgerald Marine & Repair, Inc.)*, 619 F.3d 851, 859 (8th Cir. 2010) ("Disagreement as to the meaning of a maritime contract does not make it ambiguous, nor does uncertainty or lack of clarity in the language chosen by the parties." (quoting *Breaux v. Halliburton Energy Servs.*, 562 F.3d 358, 364 (5th Cir. 2009))).

[42] *DeForge Mar. Towing, LLC v. Alaska Logistics, LLC*, 591 F. Supp. 3d 939, 948 (W.D. Wash. 2022) (quoting *Fitzgerald*, 619 F.3d at 859).

[43] *Id.* (citing *Fitzgerald*, 619 F.3d at 859).

[44] *CMA CGM, S.A. v. Waterfront Container Leasing Co.*, Case No. 12-cv-5467 JSC, 2013 WL 5645163, at *7 (N.D. Cal. Oct. 15, 2013).

[45] *Consol. Bearings Co. v. Ehret–Krohn Corp.*, 913 F.2d 1224, 1233 (7th Cir. 1990) (citation omitted) (interpreting contract under Illinois law); *accord AAA Valley Gravel, Inc. v. Totaro*, 325 P.3d 529, 534 (Alaska 2014) (Fabe, C.J., dissenting) ("[A]mbiguity in a contract generally does not arise from silence . . . ." (citations omitted)); *Nissho Iwai Europe PLC v. Korea First Bank*, 782 N.E.2d 55, 60 (N.Y. 2002) ("[A]s with all written agreements . . . ambiguity does

When a contract is ambiguous, courts may consider extrinsic evidence "concerning the subjective intent of the parties."[46] "The introduction of extrinsic evidence, however, injects a fact issue concerning the parties' intent that generally precludes summary judgment."[47]

## B.    The Parties' Arguments

Defendants initially argued in their motion for summary judgment that both the regulatory notice announcing the STRP and the contract are ambiguous as to the meaning of key terms applicable to the STRP payment.[48]  Specifically, Defendants contended that the term "commercial fishermen" in the STRP's *Federal Register* notice is ambiguous because it does not exclude deckhands,[49] but they appear to have abandoned this argument, at least in part, in their reply by acknowledging that the STRP payments were paid only to vessel owners rather than deckhands.[50]  Defendants shifted their argument to insisting that the Court treat the STRP payment as a "price adjustment" that, pursuant to the parties' contract, must be distributed to Defendants.[51]

Defendants also maintain that the contractual terms "loyalty or performance incentive" and "cash actually received," as well as the concept of a price adjustment, are

---

not arise from silence, but from 'what was written so blindly and imperfectly that its meaning is doubtful.'" (citations omitted)).

[46] *Shelter Forest Int'l Acquisition, Inc. v. COSCO Shipping (USA) Inc.*, 475 F. Supp. 3d 1171, 1181–82 (D. Or. 2020) (quoting *Nat'l Util. Serv., Inc. v. Whirlpool Corp.*, 325 F.2d 779, 781 (2d Cir. 1963)).

[47] *DeForge*, 591 F. Supp. 3d at 948 (quoting *Teras Chartering*, 2017 WL 2363632, at *7).

[48] Docket 17 at 2–3; Docket 22 at 3; Docket 25 at 1–2.

[49] Docket 17 at 2.

[50] Docket 22 at 1.

[51] *Id.* at 1–2.

*Angelette, LLC v. Bradley et al.*                    Case Nos. 1:22-cv-00055-JMK, 1:22-cv-00059-JMK, Consolidated
Order Re Motions for Summary Judgment                                                                    Page 10

Case 1:22-cv-00055-JMK   Document 26   Filed 05/30/23   Page 10 of 22

undefined and ambiguous.[52] They urge the Court to resolve these alleged ambiguities in favor of Defendants because (1) a handwritten note located on the first page of the typed contract makes reference to a price adjustment; (2) Plaintiff paid them a price adjustment in June 2020; (3) Thomassen allegedly acknowledged his inclination to share the STRP payment with crewmembers who returned to work for Plaintiff; (4) Defendants did not draft the contract; and (5) the law favors protecting seafarers' right to receive wages.[53]

In response, Plaintiff points to the STRP's broad purpose to provide trade relief and language in the program's announcement and accompanying materials that limits STRP payments to owners of commercial fishing operations at the exclusion of those with "other share-type arrangements," including "deck hand contracts."[54] Plaintiff further contends that the contract unambiguously provides that Defendants' share of the vessel's sale proceeds is their "sole compensation"; Defendants are not entitled to a price adjustment pursuant to the contract; and the STRP payment is not synonymous with the vessel's "gross stock."[55] Plaintiff also disputes Defendants' contention that the term "commercial fishermen" in the STRP materials is ambiguous given the factors USDA identified to determine eligibility for the program, including the requirement that a party

---

[52] Docket 17 at 3; Docket 22 at 3; Docket 25 at 1–2.

[53] Docket 17 at 2–3; Docket 22 at 2–3; Docket 25 at 1–2. Bradley also asserts, without providing any supporting evidence, that "[e]very other vessel owner I know, with the exception of Jay Thomassen and his son, shared the trade relief bonus with their crew." Docket 23-1 at 1 ¶ 4. Bradley's counsel makes a similar assertion in Defendants' opposition to Plaintiff's summary judgment motion, alleging—again, without providing any supporting evidence beyond one case citation—that he knows of only one other vessel owner that decided *not* to share its STRP payment with its crewmembers. Docket 22 at 3.

[54] Docket 18 at 5–6 (citations omitted).

[55] *Id.* at 11–12; Docket 24 at 2.

*Angelette, LLC v. Bradley et al.*    Case Nos. 1:22-cv-00055-JMK, 1:22-cv-00059-JMK, Consolidated
Order Re Motions for Summary Judgment    Page 11

Case 1:22-cv-00055-JMK    Document 26    Filed 05/30/23    Page 11 of 22

seeking a STRP payment have an ownership interest in the seafood produced.[56] Lastly, Plaintiff argues that Defendants' claims are barred by the statute of limitations since seafarers' wage claims must be brought "within six months after the sale of the fish."[57]

## C.    Analysis

Given Defendants' acknowledgment that USDA limited the STRP payments to those who have an ownership interest in seafood production and that the term "commercial fishermen" as defined in the *Federal Register* notice announcing the STRP is not ambiguous,[58] the Court focuses its analysis on the key issue remaining: whether the parties' contract entitles Defendants to a portion of the STRP payment Plaintiff received. Consistent with the principles of maritime contract interpretation outlined above, the Court begins by considering the intent of the parties and the plain meaning of the contract's terms and then turns to the parties' arguments.

### 1.    Intent and plain meaning

First, and perhaps most obviously, the parties could not have intended for the contract to cover the STRP payment. The STRP did not exist when the parties established the contract. It simply was not possible for the parties to contemplate an October 2020 trade relief payment from a novel regulatory program that the government had not yet conceived, let alone brought into existence, in June 2019.[59]

---

[56] Docket 21 at 4.
[57] Docket 18 at 12 (quoting 46 U.S.C. § 10602).
[58] *See* Docket 22 at 1 ("Defendant deckhands . . . concede that the Seafood Trade Relief Program (STRP) bonuses are to be paid only to vessel owners and not deckhands.").
[59] *Cf. Revitch v. DIRECTV, LLC*, 977 F.3d 713, 718 (9th Cir. 2020) (ruling, under California law, that binding arbitration clause covering affiliates did not apply to future affiliates of contracting party); *Entergy Gulf States Louisiana, L.L.C. v. Louisiana Generating, L.L.C.*,

*Angelette, LLC v. Bradley et al.*                     Case Nos. 1:22-cv-00055-JMK, 1:22-cv-00059-JMK, Consolidated
Order Re Motions for Summary Judgment                                        Page 12
Case 1:22-cv-00055-JMK    Document 26    Filed 05/30/23    Page 12 of 22

Second, the contract's terms reflect an intention to limit Defendants' compensation to their 12% share of the revenue from the 2019 fishing season and nothing further. The contract's "Compensation" paragraph contains several provisions connoting this limitation. The first line states that the contract's delineated compensation provisions provide the "*full* payment for *all* services" Defendants were to provide.[60] The compensation is defined plainly as "12% of the Vessel's gross stock (based on cash actually received by the Vessel for fish sold) after fuel, lube oil and food have been deducted."[61] The ordinary meaning of "gross stock" suggests that Defendants' compensation is limited to the funds provided by fish buyers in exchange for the fish the vessel caught. The accompanying explanatory parenthetical solidifies this interpretation, limiting that concept to a sum certain: "cash actually received by the Vessel for fish sold."[62]

Next, the contract provides, "*The* compensation will be paid 30 days after the close of the fishing effort for the season."[63] The use of the word "the" is a clear reference to the 12% share of the vessel's proceeds and further suggests that this is the only compensation the contract covers. Furthermore, the 30-day temporal limitation, when read together with the phrase "full payment" in the first sentence of the paragraph, indicates an express intention to limit Defendants' compensation to that which they would receive

---

C*IVIL* ACTION 14-385-SDD-RLB, 2018 WL 11302911, at *4 (M.D. La. Nov. 5, 2018) ("[I]t is difficult to imagine that it was the common intent of the parties, in a provision referring to past deliveries and already-issued bills, to grant access to contracts that may come into being in the future.").

[60] Docket 17-1 at 1 (emphasis added); Docket 17-2 at 1 (emphasis added).
[61] Docket 17-1 at 1; Docket 17-2 at 1.
[62] Docket 17-1 at 1; Docket 17-2 at 1.
[63] Docket 17-1 at 1 (emphasis added); Docket 17-2 at 1 (emphasis added).

*Angelette, LLC v. Bradley et al.*                    Case Nos. 1:22-cv-00055-JMK, 1:22-cv-00059-JMK, Consolidated
Order Re Motions for Summary Judgment                                                                    Page 13

Case 1:22-cv-00055-JMK    Document 26    Filed 05/30/23    Page 13 of 22

within a month of the fishing season's conclusion. The contract therefore contemplates compensation during a set time period. The Court cannot reasonably construe the contract to extend that compensation to an unknown payment—the source for which did not even exist at the conclusion of the 2019 fishing season—provided a year after the period specified therein.

The following sentence sounds the death knell for Defendants' claims. It reads, "The share will be the *sole compensation* for Crew Member."[64] There is no ambiguity in this provision. "Sole compensation" means "sole compensation." This provision could not express more clearly an intention for Defendants' compensation to be limited to the sum they received for fish sold within 30 days of the conclusion of the 2019 fishing season. The subsequent two sentences, though not necessary to clarify the meaning of the "sole compensation" sentence, nonetheless leave no room for Defendants to reasonably expect further compensation under the terms of their contract:

> All work performed by Crew Member . . . *shall be paid for by the share and shall not entitle Crew Member to extra compensation.* Crew Member is not entitled to any part of any post-contract adjustment paid to owner/operator as part of a loyalty or performance incentive paid by any fish buyer.[65]

Thus, Defendants were to receive one form of compensation—their 12% share of the cash the F/V ANGELETTE actually received for fish sold and which Plaintiff would pay out within 30 days of the close of the 2019 fishing season—and not any other "extra compensation."[66] This is not just the natural reading of these provisions; it is the only

---

[64] Docket 17-1 at 1 (emphasis added); Docket 17-2 at 1 (emphasis added).
[65] Docket 17-1 at 1 (emphasis added); Docket 17-2 at 1 (emphasis added).
[66] Docket 17-1 at 1; Docket 17-2 at 1.

*Angelette, LLC v. Bradley et al.*                    Case Nos. 1:22-cv-00055-JMK, 1:22-cv-00059-JMK, Consolidated
Order Re Motions for Summary Judgment                                                              Page 14
Case 1:22-cv-00055-JMK   Document 26   Filed 05/30/23   Page 14 of 22

plausible reading given the contract's repeated express limitations on Defendants' compensation.[67]  Defendants' assertion that any of these provisions are ambiguous would require the Court to "contravene [the] clause[s'] obvious meaning."[68]  Had the parties wished to contract for a share of any bonuses or payments from entities other than fish buyers, their contract could have specified as such or, at the very least, omitted the provisions expressly limiting Defendants' "sole compensation" to the "gross stock" as that term is articulated and defined within the contract's four corners.[69]  Therefore, given the parties' intent and the contract's plain terms, the contract is unambiguous as to Defendants' compensation and does not entitle Defendants to a 12% share of the STRP.

## 2.  Alleged ambiguities

Defendants' arguments concerning ambiguity are unfounded.  Defendants would have the Court find that the contract's silence regarding "trade bonuses" is indicative of ambiguity.[70]  But such a finding would be nonsensical.  The contract is silent on the topic of "trade bonuses" because the contract is an employment contract between a vessel and her crewmembers.  Trade relief such as the STRP, which did not exist when the parties determined Defendants' compensation, was not "naturally within the scope of the contract as written."[71]  Indeed, a contract's silence on a given topic generally means the parties did

---

[67] *Cf. Cohen v. Paramount Pictures Corp.*, 845 F.2d 851, 855 (9th Cir. 1988), *as amended* (July 22, 1988) (reversing grant of summary judgment in favor of licensee in copyright infringement suit because license agreement lacked "broad language" conferring right to exhibit films by methods not yet invented when licensor granted license).

[68] *Kirby*, 543 U.S. at 31–32 (citation omitted).

[69] *See, e.g., Flores v. Am. Seafoods Co.*, 335 F.3d 904, 908 (9th Cir. 2003) (interpreting contract expressly providing for the provision of discretionary "performance bonuses").

[70] Docket 17 at 3; Docket 22 at 3.

[71] *Consol. Bearings*, 913 F.2d at 1233.

*Angelette, LLC v. Bradley et al.*                    Case Nos. 1:22-cv-00055-JMK, 1:22-cv-00059-JMK, Consolidated
Order Re Motions for Summary Judgment                                                                      Page 15
Case 1:22-cv-00055-JMK    Document 26    Filed 05/30/23    Page 15 of 22

not reach an agreement as to that topic.[72]  This is particularly apposite when the topic at issue is an event occurring after the contract's term concludes.  The Court will not defy the only sensible interpretation of this omission.

Defendants also argue that ambiguity arises from the lack of definitions of "post-contract adjustment" or "loyalty or performance incentive."[73]  However, the contract uses these terms in conjunction with the phrase "paid by any fish buyer."[74]  The contract's connecting these terms reflects an intent to speak to them as one, interrelated concept, and the Court construes them as such.[75]  Thus, the contract contemplates the existence of price adjustments but only to the extent they are paid by fish buyers.  The government, though, was not a fish buyer.  USDA did not provide the STRP payment in exchange for fish sold. Instead, it issued the payment "for the purpose of expanding or aiding in the expansion of domestic markets for U.S. caught and sold seafood."[76]  Although the Department used commercial fishermen's 2019 reported production to determine the payment, the payment

---

[72] *Cf. Fawkner v. Atlantis Submarines, Inc.*, 135 F. Supp. 2d 1127, 1133 (D. Haw. 2001) (finding, under Hawaii law, that a contract's silence on the effect of an employee's injury on his employment indicated that the parties did not reach an agreement on that issue and intended for the contract to terminate on the date specified therein).

[73] Docket 17 at 3; Docket 22 at 1–2.

[74] Docket 17-1 at 1; Docket 17-2 at 1.

[75] Docket 17-1 at 1; Docket 17-2 at 1; *see also DeForge*, 591 F. Supp. 3d at 952 ("[I]t would be unreasonable to interpret those terms as imposing strict liability within the context of the entire clauses in which they appear." (citing *F.W.F., Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342, 1358 (S.D. Fla. 2007), *aff'd*, 308 F. App'x 389 (11th Cir. 2009))); *F.W.F., Inc.*, 494 F. Supp. 2d at 1358 ("[T]he meaning of an unclear word or phrase should be determined by the words immediately surrounding it." (citations omitted)); *cf. Del Rey Fuel, LLC v. Bellingham Marine Indus., Inc.*, Case No. CV 12-01008 MMM (MANx), 2012 WL 12941956, at *8 (C.D. Cal. Apr. 10, 2012) (noting, while interpreting contract under California law, "the principle that contract terms should be harmonized whenever possible").

[76] STRP Notice at 56572.

*Angelette, LLC v. Bradley et al.*                                          Case Nos. 1:22-cv-00055-JMK, 1:22-cv-00059-JMK, Consolidated
Order Re Motions for Summary Judgment                                                                                         Page 16

Case 1:22-cv-00055-JMK   Document 26   Filed 05/30/23   Page 16 of 22

was not provided in exchange for the 2019 production.[77]  As such, the contract's silence as to these definitions does not indicate ambiguity; it indicates that the sharing of payments from non-buyers is beyond the scope of the contract and therefore excluded from Defendants' compensation given the express limitations thereon.

Put differently, if the Court were to find the above-mentioned language ambiguous, it would have to ignore the intent behind the express exclusion in the "Compensation" paragraph's final clause.  This clause specifies that Defendants are "*not entitled to any part of any* post-contract adjustment paid to owner/operator as part of a loyalty or performance incentive paid by any fish buyer."[78]  This exclusion strongly suggests that, even if the Court were to ignore the "fish buyer" phrase and construe the STRP payment as a "post-contract adjustment" falling within the scope of the contract, the contract would not entitle Defendants to any portion of it.  Defendants' oscillating arguments that the STRP payment is somehow within the scope of the contract because it is a "price adjustment," yet is not subject to this exclusion because of the phrase "fish

---

[77] In the *Federal Register* notice, USDA did not specify why it chose 2019 production figures to generate the STRP payment.  *See generally* STRP Notice.  It appears reasonably likely that it chose 2019 because that year was the most recent entire calendar year preceding the STRP's inception in 2020.  As further indication that USDA did not intend for the STRP to constitute a price adjustment targeting the 2019 fishing year, USDA used data from 2017, not 2019, "to estimate [the] gross trade damages" for which the STRP would compensate commercial fishermen. *Id.* at 56573.  Thus, to the extent the STRP was an adjustment, it was a macroeconomic adjustment intended to ameliorate disruptions to an entire industry over a period of multiple years rather than compensate individual employees of commercial fishing operations in 2019.  *See* STRP Notice at 56575 ("[T]he intent of STRP is to provide financial assistance to commercial fishermen for expanding or aiding in the expansion of domestic markets for U.S. commercially caught and sold seafood, because seafood commodities have been impacted by trade actions of foreign governments resulting in the loss of exports."); Clarification Notice at 4 ("[D]eckhand contracts . . . are not recognized for STRP program purposes.").

[78] Docket 17-1 at 1 (emphasis added); Docket 17-2 at 1 (emphasis added).

*Angelette, LLC v. Bradley et al.*                        Case Nos. 1:22-cv-00055-JMK, 1:22-cv-00059-JMK, Consolidated
Order Re Motions for Summary Judgment                                                                      Page 17
Case 1:22-cv-00055-JMK    Document 26    Filed 05/30/23    Page 17 of 22

buyer," stretch the limits of rationality.[79]  Defendants cannot have their (salmon) cake and eat it too.

### 3.    Extrinsic evidence

To provide further support for their proffered interpretation, Defendants offer extrinsic evidence in the form of the June 2020 price adjustment Plaintiff paid Defendants, Thomassen's alleged statement that the STRP payment would be shared with crew that returned to work for Plaintiff, and unsupported statements by Bradley and Defendants' counsel that they are unaware of any other commercial fishermen who did not share their STRP payments with crewmembers.[80]  Having found that the contract is not ambiguous, the Court need not entertain this extrinsic evidence.[81]

Even if the Court were to consider this evidence, however, it does not change the plain meaning of the contract.  Plaintiff's decision to provide a price adjustment to Defendants in June 2020 does not contradict the contract's express limitation of Defendants' wages to their share of the cash received from fish sold during the 2019 fishing season.  The price adjustment was issued presumably because the price one or more fish buyers paid to Plaintiff for fish caught in 2019 had changed, in which case the price

---

[79] *See DeForge*, 591 F. Supp. 3d at 952 (interpreting maritime contract to avoid absurd result).

[80] *See* Docket 17-3 at 1 (price adjustment); Docket 22 at 3 (counsel's statement); Docket 23-1 at 1 (Bradley's statements regarding Thomassen and other commercial fishermen).

[81] *See Shelter Forest*, 475 F. Supp. 3d at 1181–82 (D. Or. 2020) (declining to consider extrinsic evidence on parties' prior course of dealing as a means to introduce ambiguity into an otherwise unambiguous maritime contract provision); *cf. Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 71 (2d Cir. 2011) ("Because the contract is unambiguous, it was error for the district court to consider extrinsic evidence of the parties' post-contract conduct." (citing *Int'l Klafter Co. v. Cont'l Cas. Co.*, 869 F.2d 96, 100 (2d Cir. 1989))).

*Angelette, LLC v. Bradley et al.*                Case Nos. 1:22-cv-00055-JMK, 1:22-cv-00059-JMK, Consolidated
Order Re Motions for Summary Judgment                                                                       Page 18

Case 1:22-cv-00055-JMK   Document 26   Filed 05/30/23   Page 18 of 22

adjustment conceivably could fall under the contract's definition of "gross stock."[82] By contrast, the STRP payment was not a "post-contract adjustment" naturally within the scope of the contract.[83] Further, although Plaintiff's sharing the price adjustment may be inconsistent with the provision of the contract stating that Defendants are not entitled to "post-contract adjustment[s]," the contract does not necessarily prohibit Plaintiff from paying any price adjustment.[84] It simply prohibits Defendants from being entitled as of right to price adjustments paid "as part of a loyalty or performance incentive."[85] Relatedly, even if Plaintiff's payment of the price adjustment did waive or nullify the price adjustment exclusion, it did so only to price adjustments paid "by any fish buyer" and not to the STRP payment, which was not a price adjustment and was paid by a non-buyer third party.[86]

Thomassen's alleged statement that the STRP payment was "for returning crew only" does not serve Defendants any better.[87] Although "alteration, modification, or waiver of maritime contract provisions may be implied from the circumstances surrounding performance of the contract,"[88] Bradley's depiction of Thomassen's post-contract statement is a self-serving, uncorroborated allegation that, even if true, does not constitute an actual offer to pay Bradley or modify the contract's unambiguous declaration that Defendants' 12% share of the vessel's "gross stock" was their "sole compensation."[89] The

---

[82] Docket 17-1 at 1; Docket 17-2 at 1.
[83] Docket 17-1 at 1; Docket 17-2 at 1.
[84] Docket 17-1 at 1; Docket 17-2 at 1.
[85] Docket 17-1 at 1; Docket 17-2 at 1.
[86] Docket 17-1 at 1; Docket 17-2 at 1.
[87] Docket 23-1 at 1 ¶ 2.
[88] *NextWave Marine Sys., Inc. v. M/V Nelida*, 488 F. Supp. 3d 1004, 1012 (D. Or. 2020) (citing *Stauffer Chem. Co. v. Brunson*, 380 F.2d 174, 182 (5th Cir. 1967)).
[89] Docket 17-1 at 1; Docket 17-2 at 1.

*Angelette, LLC v. Bradley et al.*                    Case Nos. 1:22-cv-00055-JMK, 1:22-cv-00059-JMK, Consolidated
Order Re Motions for Summary Judgment                                                                    Page 19

Case 1:22-cv-00055-JMK    Document 26    Filed 05/30/23    Page 19 of 22

same logic applies to the unsupported statements concerning other commercial fishermen's sharing their STRP payments.[90] What others in the industry have done with their STRP payments may signal an industry custom for treating payments from this novel, short-lived regulatory program, but proof of an industry custom is relevant primarily when a contract is ambiguous.[91] The actions of other, more crewmember-friendly operators do not establish legally binding precedent or change the clear language in the instant contract. Defendants also fail to support their claims by identifying any specific commercial fishermen who shared the STRP payment with crewmembers despite opportunities to do so throughout the course of briefing both motions for summary judgment.[92]

### 4. Defendants' special status

Defendants argue that contractual ambiguities should be construed against their drafters,[93] but the Court has found that the contract is unambiguous as to whether Defendants are entitled to a share of the STRP payment. Defendants' final argument suggests that the Court should construe the contract in Defendants' favor pursuant to principles of wardship theory.[94] The Court is mindful that courts ought to "protect[] seamen in their contractual dealings with masters and owners"[95] but finds that Defendants

---

[90] Docket 22 at 3; Docket 23-1 at 1.

[91] *See Metric Constructors, Inc. v. Nat'l Aeronautics & Space Admin.*, 169 F.3d 747, 752 (Fed. Cir. 1999) ("A contracting party cannot, for example, invoke trade practice and custom to create an ambiguity where a contract was not reasonably susceptible of differing interpretations at the time of contracting.").

[92] *See generally* Docket 17; Docket 22; Docket 23-1; Docket 25.

[93] Docket 25 at 2.

[94] *Id.* (first citing 2 Robert Force & Martin J. Norris, THE LAW OF SEAMEN § 26:4 (5th ed. 2003); and then citing *Seattle-First Nat'l Bank v. Conaway*, 98 F.3d 1196 (9th Cir. 1996)).

[95] Force & Norris, *supra*, § 26:4.

*Angelette, LLC v. Bradley et al.*          Case Nos. 1:22-cv-00055-JMK, 1:22-cv-00059-JMK, Consolidated
Order Re Motions for Summary Judgment                                                    Page 20

Case 1:22-cv-00055-JMK     Document 26     Filed 05/30/23     Page 20 of 22

need no additional protection here beyond that which their contracts provided them. Defendants contracted with Plaintiff to earn a 12% share of the F/V ANGELETTE's gross stock, and they received that share. This is not a situation where a vessel owner has refused in an "arbitrary and unscrupulous"[96] manner to pay wages to its crewmembers or has taken advantage of an oral agreement.[97] Plaintiff even construed the contract's only possible ambiguity related to compensation—the handwritten note referencing the possibility of a price adjustment—in Defendants' favor by sharing with them the price adjustment later paid to Plaintiff.[98] As recognized in THE LAW OF SEAMEN, and notwithstanding their special status as "wards of the admiralty," "seamen are *sui juris* and responsible at law for their contracts."[99] Therefore, the Court will hold the parties to their June 2019 bargain.

## IV. CONCLUSION

For these reasons, the Court finds that the parties' contract does not entitle Defendants to a portion of the STRP payment. As unfortunate as it may be that Plaintiff has decided not to share the STRP payment with its crewmembers, the Court cannot rewrite the parties' contract. Because there is no genuine dispute as to any material fact, Defendants are not entitled to summary judgment on their wage claims. Since Defendants' wage claims are the only alleged bases for the maritime liens filed against the F/V ANGELETTE, Plaintiff is entitled to summary judgment on its claim seeking a

---

[96] *Petersen v. Interocean Ships, Inc.*, 823 F.2d 334, 336 (9th Cir. 1987) (quoting *Collie v. Fergusson*, 281 U.S. 52, 55–56 (1930)).

[97] *See, e.g.*, *Seattle-First*, 98 F.3d at 1199 ("This is a case where seamen have suffered two wrongs: first, they were not given the written agreement to which they were entitled, and second, they were not given their wages.").

[98] Docket 17 at 2; Docket 17-3 at 1.

[99] Force & Norris, *supra*, § 26:4 (citations omitted).

*Angelette, LLC v. Bradley et al.*                Case Nos. 1:22-cv-00055-JMK, 1:22-cv-00059-JMK, Consolidated
Order Re Motions for Summary Judgment                                                                    Page 21

Case 1:22-cv-00055-JMK   Document 26   Filed 05/30/23   Page 21 of 22

declaration that the maritime liens asserted by Defendants are null, void, and of no effect. Lastly, because the Court has considered Defendants' arguments on the merits and is granting Plaintiff's requested relief, the Court need not reach Plaintiff's arguments concerning whether Defendants' wage claims are time barred.

Defendants' *Motion for Partial Summary Judgment That Defendant Deckhands Are Entitled to Share in the Seafood Trade Relief Program Bonus Paid to Vessel Owner* at Docket 17 is **DENIED**. Plaintiff's *Motion for Summary Judgment* at Docket 18 is **GRANTED**. The Clerk of Court is directed to enter a final judgment accordingly.

IT IS SO ORDERED this 26th day of May, 2023, at Anchorage, Alaska.


    */s/ Joshua M. Kindred*
JOSHUA M. KINDRED
United States District Judge

*Angelette, LLC v. Bradley et al.*          Case Nos. 1:22-cv-00055-JMK, 1:22-cv-00059-JMK, Consolidated
Order Re Motions for Summary Judgment                                                    Page 22

Case 1:22-cv-00055-JMK   Document 26   Filed 05/30/23   Page 22 of 22